## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **RUSSELL D. LUKAS** ) | |
| 10 Wetherfield Court ) | |
| Potomac, Maryland 20854 ) | |
| 301-509-2450 ) | |
| ) | |
| Plaintiff ) | |
| v. ) | Civil Action No. |
| ) | |
| **FEDERAL COMMUNICATIONS COMMISSION** ) | |
| 445 12th Street, S.W. ) | |
| Washington, D.C. 20554 ) | |
| ) | |
| Defendant ) | |

---

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking the release of a document improperly withheld from Plaintiff by Defendant Federal Communications Commission ("FCC") and a declaration that Universal Service Administrative Company ("USAC") is not a government agency subject to FOIA.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3.      Plaintiff is an attorney with the law firm of Lukas, LaFuria, Gutierrez & Sachs, LLP with offices in Washington D.C. and Tysons, Virginia.  Plaintiff regularly represents clients before the FCC and USAC.

4.      Defendant FCC is an agency of the federal government and an independent regulatory agency within the meaning of 5 U.S.C. §§ 551(1), 552(f)(1).  Congress authorized the FCC to execute and enforce the universal service provisions of §§ 214(e) and 254 of the Communications Act of 1934, as amended ("Act"), 47 U.S.C. §§ 214(e), 254.  Pursuant to this authority, the FCC has established federal universal service support mechanisms ("Universal Service Programs") and the Universal Service Fund ("USF").

## REGULATORY BACKGROUND

5.      The FCC may only delegate any of its functions to a panel of commissioners, an individual commissioner, an employee board, or an individual employee.  *See* 47 U.S.C. § 155(c)(1).

6.      USAC is a Delaware corporation and a wholly-owned subsidiary of the National Exchange Carrier Association, Inc., which is a non-stock membership corporation comprised of 1,300 telecommunications carriers.  USAC is not an agency of the Government under 5 U.S.C. §§ 551(1), 552(f)(1).

7.      In 1997, the FCC asked Congress for statutory authority to designate USAC to administer the Universal Service Programs established under § 254 of the Act.  Such authorization was not granted by Congress.  Nevertheless, in 1998, the FCC appointed USAC to be the permanent Administrator of the Universal Service Programs.  *See* 47 C.F.R. § 54.701(a).

8.      Each telecommunications carrier is required to contribute to the USF based on its interstate and international telecommunications revenue.  *See* 47 U.S.C. § 254(d).  All disbursements from the USF are made to eligible telecommunications carriers.  *See id.* §§ 214(e)(1), 254(e).  USAC collects, pools, and disburses the universal service support funds that telecommunications carriers contribute to the USF.  *See* 47 C.F.R. § 54.702(b).

9.     USAC's Board of Directors is composed of seven representatives of telecommunications carriers, two representatives of providers of USF-supported services other than telecommunications services, six representatives of beneficiaries of USF support, one representative of state telecommunication regulators, one representative of state consumer advocates, and USAC's Chief Executive Officer.  *See id*. § 54.703(b).

10.     One of the Universal Service Programs administered by USAC is the Rural Health Care ("RHC") Program which ensures that eligible rural health care providers ("HCPs") pay the same amount for telecommunication service as their urban counterparts.  *See id*. § 54.602(a).  The RHC Program is administered by USAC's Rural Health Care Division ("RHCD") in accordance with the FCC's rules for that program.  *See id*. §§ 54.600-.680.

11.     Through the Telecommunications ("Telecom") Program, which is part of the RHC Program, rural HCPs may obtain rates for USF-supported services that are no higher than the highest commercial rate for a similar service in the closest city with a population of 50,000 or more.  *See id*. § 54.605.  USF support payments are made to telecommunications carriers providing the service and are calculated as the difference between the high rate charged to HCPs in rural areas and the lower urban rate.  *See id.* §§ 54.602(a), .609(a).

12.     A Telecom Program rule requires an HCP to participate in a competitive bidding process to select the telecommunications carrier that will provide the services eligible for USF support.  *See id*. § 54.603(a).

13.     The FCC permits USAC to act on applications for USF support under the Telecom Program and to determine whether participants in the Telecom Program have complied with the FCC's rules, and it has permitted USAC to establish procedures under which it will act on such applications and make such determinations.  *See id*. § 54.705(b)(iii).

14.     Under the FCC's rules, any party aggrieved by an action taken by the RHCD must first seek review from USAC.  *See id*. § 54.719(a).  Any party aggrieved by the action taken by USAC may request that the FCC or its Wireline Competition Bureau ("Bureau") conduct a *de novo* review of USAC's decision.  *See id*. §§ 54.719(b), .721(a), .722(a), .723.  If any request for review alleges prohibited conduct by a third party, the request for review must be served on the third party. *See id.* § 54.721(d).

15.     Under the FCC's rules, an entity that submits materials that it wishes withheld from public inspection under 5 U.S.C. § 552(b)(4) ("Exemption 4") must submit a request for non-disclosure pursuant to 47 C.F.R. § 0.459.  *See id*. § 0.457(d)(2).

## FACTS

16.     In March 2011, ABS Telecom LLC ("ABS") entered into a Dealer Agreement to serve as a sales agent for Windstream Communications, LLC ("Windstream"), a telecommunications carrier that participated in the Telecom Program.  At the same time, ABS and its Managing Partner, Gary Speck ("Speck"), provided consulting services to rural HCPs in Texas that also participated in the program.

17.     Windstream claims that it first learned in February 2016 that ABS was playing the dual role of a sales agent for Windstream and a consultant for HCPs.  Claiming that ABS' dual role created a conflict of interest and violated the Telecom Program's competitive bidding rule, Windstream terminated its Dealer Agreement with ABS in April 2016, refused to pay commissions due ABS under the agreement, and demanded to be indemnified by ABS.

18.     On March 13, 2017, the RHCD sent an email to three Texas HCPs notifying them that their applications for more than $14.6 million in USF support had been denied, because their selection of Windstream as their service provider was not the result of a "fair and open competitive

bidding process" in violation of the Telecom Program rules.  The so-called Denial Notice, which was also emailed to ABS, Speck, and Windstream, referred the parties to a "Further Explanation of the Administrator's Decision Letter" ("Further Explanation"), which was attached to the Denial Notice.

19.     The Further Explanation was a 17-page letter from the RHCD to the HCPs and Windstream.  The RHCD explained that, based on a record, it found that Speck's role as a consultant for the HCPs and a sales agent for Windstream created a "conflict of interest" that "undermined fair and open competitive bidding" in violation of unspecified FCC rules.  The RHCD disclosed that the record consisted of "information and documentation" that it had been provided.  Seven documents were cited in the Further Explanation.

20.     Plaintiff was retained by ABS and Speck to prepare a request that USAC review the RHCD's decision.

21.     On April 27, 2017, Plaintiff notified the RHCD that ABS and Speck would request review of its decision, and he asked for copies of the documents cited in the Further Explanation. Concerned that Windstream and the HCPs might claim that ABS was solely responsible for the alleged violations, Plaintiff requested that Windstream and the HCPs serve him with a copy of any appeal that they may file.

22.     On May 9, 2017, the RHCD informed Plaintiff that he would have to obtain the documents cited in the Further Explanation either from the HCPs or Windstream, or pursuant to a FOIA request.

23.     On May 11, 2017, Windstream filed a request ("Windstream Appeal") that USAC review the RHCD's decision.  Windstream did not submit a request for non-disclosure of the Windstream Appeal.

24.     On May 12, 2017, Plaintiff filed a request on behalf of ABS and Speck that USAC review the RHCD's decision ("ABS Appeal").   On the same day, Plaintiff was notified by Windstream's counsel that: (a) the FCC's rules did not require Windstream to serve Plaintiff; (b) Windstream declined to do so; (c) the Windstream Appeal did not allege prohibited conduct by ABS or Speck; and (d) any materials provided by Windstream in response to information requests from USAC are not subject to disclosure under FOIA § 552(b)(7) ("Exemption 7") and Exemption 4.

25.     On May 23, 2017, Plaintiff participated in a conference call which included several members of the RHCD staff, as well as counsel for the HCPs and Windstream.  Plaintiff asked to be given a copy of the Windstream Appeal.  The request was denied by Windstream and the RHCD.  The staff informed Plaintiff that he had to file a FOIA request to obtain a copy of the document.

26.     Plaintiff did not believe that the Windstream Appeal could be obtained pursuant to FOIA, because the document had been obtained by USAC, and was then under the exclusive control of USAC, which was not an "agency" under FOIA.  Nevertheless, after the May 23, 2017 conference call ended, Plaintiff electronically submitted a FOIA request asking that the FCC produce the Windstream Appeal for inspection.

27.     The Bureau informed Plaintiff that his FOIA request was received by the FCC on May 24, 2017.

28.     On June 26, 2017, the Bureau notified Plaintiff that it was extending the time within which to respond to his FOIA request an additional 10 working days to July 10, 2017.

29.     On September 8, 2017 – 108 days after Plaintiff submitted his FOIA request – the Bureau sent Plaintiff 45 pages of the 52-page Windstream Appeal.  The Bureau withheld seven

pages in full pursuant to Exemption 7(E) to FOIA, and redacted material on the pages it produced

pursuant to Exemptions 6 and 7(E).  In particular, the Bureau took the following actions:

- Redacted two lines of text on page 6 of the Windstream Appeal that referred to Exhibit E to that document;

- Withheld pages 4-7 of Exhibit A, which was the Further Explanation that the RHCD had emailed to ABS and Speck on March 13, 2017, and which had become Attachment 2 to the ABS Appeal that Plaintiff had prepared and filed with USAC;

- Redacted the email addresses of the RHCD and the recipients of the Denial Notice, which was Exhibit B of the Windstream Appeal;

- Redacted the signature of Warren Lai ("Lai") on a Texas Certificate of Amendment that ABS had given Windstream and had become Exhibit C to the Windstream Appeal;

- Withheld Exhibit D, which was a June 15, 2016 email from USAC's Jeremy Matkovich ("Matkovich") to Lai, a copy of which had been sent to Speck;

- Withheld Exhibit E, which was Windstream's response to a December 23, 2016 email from Matkovich to Windstream's Tim Loken ("Loken") requesting an explanation of some of Windstream's costs; and

- Redacted Loken's signature from his declaration that supported the Windstream Appeal.

30.     With respect to its invocation of Exemption 6, the Bureau explained, "Balancing

the public's right to disclosure against the individual's right to privacy, we have determined that

release of email addresses and signatures in these pages would confer no public benefit and would

constitute a clearly unwarranted invasion of personal privacy."

31.     With respect to Exemption 7(E), the Bureau stated:

We have withheld and redacted material in the records responsive to your request in order to prevent disclosure of techniques and procedures for USAC investigations. We find that release of these materials would disclose guidelines and methods for such investigations and could facilitate circumvention of Commission rules.

32.     The Bureau informed Plaintiff that he was not billed for search time because the

FCC was unable to process his FOIA request by the July 3, 2017 due date.  However, Plaintiff was

charged "total direct review costs" of $213.54.        .

33.     Plaintiff learned from the redacted version of the Windstream Appeal that Windstream had attempted to make ABS solely liable for the alleged violations by falsely claiming that it had been unaware prior to February 2016 that Speck was a consultant for the HCPs.

34.     On October 31, 2017, Plaintiff filed an application for review ("Appeal") of the Bureau's FOIA action with the FCC's Office of General Counsel ("OGC").  Plaintiff pointed out that the Bureau had withheld three and one-half pages of the Further Explanation that: (a) the RHCD had served on Speck, Lai, Windstream, and the HCPs; (b) had been attached to the appeal papers filed by ABS, Windstream, and the HCPs as required by USAC; (c) had been addressed by the parties in their appeal papers; (d) was already in Plaintiff's possession and in the public domain; and (e) had to be in the administrative record for *de novo* review by the Bureau and the FCC. Plaintiff showed that the Bureau's claims that the release of the withheld portion of the Further Explanation would reveal "techniques and procedures" for USAC investigations and "guidelines and methods" for such investigations were patently false.

35.     Plaintiff argued that the Bureau improperly invoked Exemptions 6 and 7(E). Among Plaintiff's arguments were the following:

- Because USAC is not an agency of the federal government, the records or information that the RHCD compiles are not protected by Exemptions 6 and 7(E).  Moreover, because USAC is without lawful authority to enforce the provisions of the Act, the records or information that RHCD compiles cannot be characterized as having been "compiled for law enforcement purposes."

- The Windstream Appeal was in the control of USAC on May 23, 2017, when the FOIA request was made.  Because USAC is not a federal agency, the Windstream Appeal cannot be an agency record under FOIA.

- The Windstream Appeal had been compiled by Windstream's counsel, not by the RHCD, USAC, or the FCC, and it was not compiled for law enforcement purposes. The document was compiled after the RHCD rendered its decision, and its compilation was for the sole purpose of requesting that USAC review the RHCD's decision.

- The Bureau's claim that email addresses and signatures were protected by Exemption 6 was specious. For example, the Bureau needlessly redacted the signatures of Lai and Loken, but not their names which appeared directly below their signature lines. Moreover, information that identifies individuals who merely receive documents does not fall within Exemption 6.

36.     Plaintiff requested the FCC to hold that USAC is not a federal agency for the purposes of FOIA.

37.     Recognizing that the RHCD had emailed the Denial Notice to Speck and that Matkovich had sent a copy of his June 15, 2016 email to Speck, the OGC sent unredacted copies of Exhibits B and D to Plaintiff on April 13, 2018, thereby effectively reversing the Bureau with respect to the redactions to Exhibit B and the withholding of Exhibit D.

38.     The OGC effectively reversed the Bureau with respect to the redaction to page 6 of the Windstream Appeal on May 10, 2018, when it emailed an unredacted copy of page 6 to Plaintiff.

39.     On June 29, 2018, the RHCD denied the ABS Appeal, the Windstream Appeal, and a second appeal that Windstream had filed with respect to the RHCD's issuance of Commitment Adjustment Letters to the HCPs ("Windstream COMADs Appeal").  The RHCD issued three separate letter decisions, even though all three decisions addressed the same issues.  The "Administrator's Decision on the [RHC] Program Appeal" was identical in each letter.  The RHCD simply repeated the following:

> USAC is unable to grant the Appeal because Mr. Speck's dual role as a consultant for the Applicants and channel partner for Windstream created a conflict of interest that tainted the competitive bidding process for the FRNs listed in the Appendices. Therefore, because the competitive bidding process that resulted in the Applicants' selection of Windstream as the service provider for these funding requests was not fair and open, in violation of the FCC's rules and requirements, USAC denies the Appeal.

40.     Plaintiff had filed ABS' responses to the Windstream Appeal and the Windstream

COMADs Appeal.  Even though ABS was a party to the proceedings, the RHCD did not serve Plaintiff with its decisions on the two Windstream appeals.  On July 3, 2018, Plaintiff asked the RHCD for copies of its decision.

41.     On August 9, 2018, the RHCD notified Plaintiff that it would not provide him with copies of its decisions on the Windstream Appeal and the Windstream COMADs Appeal.  The RHCD claimed that ABS was not entitled to copies of the decisions, because the FCC's *ex parte* rules do not apply to USAC decisions.  The RHCD stated that Plaintiff had to obtain the decisions from Windstream or pursuant to an FOIA request.

42.     On August 23, 2018, Plaintiff was served with a copy of Windstream's request that the FCC review the RHCD's decisions denying the Windstream Appeal and the Windstream COMADs Appeal.  Exhibit D to that request was a copy of the Exhibit E (Windstream's response to the Matkovich email) that the Bureau was withholding.  It appeared that Windstream had redacted five sentences or portions of sentences on the first two pages of Exhibit E and had redacted the third page in full.

43.     On September 18, 2018, Plaintiff amended his Appeal to reflect that he had obtained all the documents he had sought except for an unredacted copy of Exhibit E.

44.     On November 2, 2018, the OGC asked Plaintiff if he was "amenable to dropping" his Appeal.  Plaintiff informed the OGC that he did not want to withdraw his Appeal, because the issues he raised were not moot and because he wanted the FCC to issue a final order.

45.     On November 21, 2018 — 386 days after Plaintiff filed his Appeal with the FCC — the Bureau emailed Plaintiff a letter in which it claimed that the Appeal was subject to dismissal as moot, because he had obtained the information that the Bureau had redacted with the exception of the portions of Exhibit E which Windstream had redacted.  It also stated:

We find that FOIA Exemption 4 applies to the redacted material and we will continue to withhold it. The redacted material relates to pricing of Windstream's telecommunications services for which rural [HCPs] sought universal service funding, and specifically consists of the terms of lease arrangements, sales commissions, and discounts. The third page is evidently a screen shot of a web-based tool that also contains Windstream pricing information. … We have determined that disclosure of this confidential commercial or financial information would harm the competitive position of Windstream or would otherwise be prohibited by law.

46.     Although Plaintiff had not submitted a second FOIA request, the Bureau advised him that he could file an application for review with the OGC if he considered the Bureau's letter to be a denial of his FOIA request.

47.     Although Plaintiff was requesting that the FCC grant his modified Appeal and produce an unredacted copy of Exhibit E, the Bureau informed him that he was not being charged for "searching for, reviewing, and reproducing the records requested," because he was being provided "no additional records and the review costs for Exhibit E [were] *de minimis*."

48.     On November 21, 2018, Plaintiff asked the OGC to confirm that the FCC would dismiss his Appeal and to advise him when he could expect to see the FCC's decision. On November 26, 2018, the OGC advised Plaintiff that he had the right to appeal the Bureau's "supplemental decision" within 90 days, and that the timing of the agency's "next step" would depend on when or whether he appealed.

**EXHAUSTION OF REMEDIES**

49.     Plaintiff modified his FOIA request on September 18, 2018, to seek only an unredacted copy of Exhibit E to the Windstream appeal.

50.     The FCC has failed to act on Plaintiff's Appeal within 20 business days and has not asked Plaintiff to consent to an extension of the time within which it could act on the Appeal.

51.     To date, the FCC has not provided the document that Plaintiff has requested.

52.     Plaintiff has exhausted his administrative remedies with respect to his FOIA request.  *See* 5 U.S.C. § 552(a)(6)(C)(i).

## THE FOIA VIOLATION

53.     Congress has not authorized USAC either to act as an agency of the federal government or to administer the Universal Service Programs.

54.     The FCC "may establish or acquire a corporation to act as an agency only by or under a law of the United States specifically authorizing the action."  31 U.S.C. § 9102.  No federal law specifically authorizes the FCC to establish USAC to act as an agency.

55.     Congress did not authorize the FCC to subdelegate any authority to USAC. Therefore, USAC cannot be an "authority of the Government of the United States."  5 U.S.C. § 551(1).

56.     USAC is not an "executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government … or [an] independent regulatory agency."  *Id*. § 552(f)(1).  Therefore, USAC is not an "agency" for the purposes of FOIA.

57.     Because USAC is not a federal agency, the Windstream Appeal did not become an "agency record" for the purposes of FOIA when it was submitted to USAC.

58.     On May 23, 2017, Plaintiff followed established FCC policy and directed his FOIA request for the Windstream Appeal to the FCC, where the Bureau would be deemed to be the custodian of the document.

59.     When Plaintiff submitted his FOIA request, the FCC had not obtained the Windstream Appeal and the FCC was not in control of the document.  Consequently, the Windstream Appeal did not, and could not, become an agency record for the purposes of FOIA

when the Bureau subsequently obtained the document.

60.     Because Exhibit E was not part of an agency record, the FCC could not withhold the document under FOIA Exemption 4 and/or Exemption 7(E).

61.     Alternatively, if Exhibit E of the Windstream Appeal became an agency record for the purposes of FOIA when it was obtained by the Bureau, the FCC is wrongfully withholding Exhibit E from Plaintiff because:

- Exhibit E cannot be withheld pursuant to Exemption 4, because it was initially submitted involuntarily by Windstream to the RHCD on January 6, 2016 in response the RHCD's December 23, 2016 request for information. Windstream resubmitted Exhibit E to USAC on May 11, 2017 without requesting that the document be withheld from public inspection. USAC made Exhibit E available to the Bureau sometime after May 23, 2017, when Plaintiff submitted his FOIA request. Disclosure of Exhibit E at this time would not cause substantial harm to the competitive position of Windstream.

- Exhibit E cannot be withheld pursuant to Exemption 7(E), because it was not compiled for law enforcement purposes. Moreover, production of Exhibit E at this time would not disclose any of USAC's techniques, procedures, or guidelines. The questions that the RHCD directed to Windstream on December 23, 2016 were disclosed to Plaintiff on August 23, 2018, when Windstream served him with a redacted copy of Exhibit E as Exhibit D of the Windstream COMADs Appeal.

**THE CONTROVERSY**

62.     Without statutory authorization, and in contravention of § 155(c)(1) of the Act, the FCC delegated the administration of the Universal Service Programs to USAC. One of the functions that the FCC requires USAC to perform is to act on applications for USF support. Thus, the FCC has established USAC as an adjudicator of private rights.

63.     USAC has established administrative procedures that aggrieved parties must follow to appeal the adjudicatory decisions of its divisions, including the RHCD. Those procedures do not afford litigants access to the documents in the administrative record that they need to review and address in their appeals. USAC forces litigants to file FOIA requests with the FCC to obtain the documentary evidence upon which USAC bases its decisions.

13

64.     The FCC has recognized that USAC does not provide parties with the specific information necessary for them to determine the basis of USAC's decisions and to prepare comprehensive responses to those decisions.

65.     Although USAC is supposed to act in accordance with the FCC's orders, rules, and directives, USAC does not abide by the FCC's *ex parte* rules that were crafted to achieve fundamental fairness and a full and publicly available record, while permitting the vigorous exchange of information necessary for reasoned and informed decision-making.

66.     Since at least 2001, the FCC has required members of the public to file FOIA requests with the Bureau to inspect materials in the possession of USAC.  The FCC assesses an hourly fee for USAC personnel to search for USAC records in response to FOIA requests.

67.     The FCC's policy or practice of requiring parties to file FOIA requests to obtain documents from USAC imposes unnecessary and unwarranted search and review fees upon requesters.

68.     The FCC's policy or practice of requiring parties to file FOIA requests to obtain documents from USAC harms requesters by subjecting them to extraordinary delays.  The reported cases involving appeals from denials of FOIA requests for USAC documents took an average of 626 days for the FCC to issue its decision.  At the same time, appeals in all FOIA cases took an average of 303 days to complete.

69.     The Windstream Appeal was readily accessible to the RHCD.  Plaintiff's FOIA request for that one document did not require a search.  Nevertheless, the Bureau took 108 days to respond to Plaintiff's FOIA request.

70.     The Bureau flouted FOIA's requirements by withholding information that the RHCD had sent to the parties and that was obviously in Plaintiff's possession.  The OGC conceded

14

that the Bureau had wrongfully withheld such information when the OGC turned over unredacted portions of the Windstream Appeal to Plaintiff.

71.     Plaintiff's FOIA request and his Appeal have been pending 643 days.

72.     Since 2007, the FCC has repeatedly held that USAC qualifies as a law enforcement agency for the purposes of FOIA Exemption 7(E) even though USAC is a private, not-for-profit corporation.  Although the FCC has expressly acknowledged that USAC is not itself an agency with enforcement powers, it has held that Exemption 7(E) applies to USAC's records because: (a) USAC administers Universal Service Programs on behalf of the FCC; (b) USAC's actions are reviewable by the FCC; and (c) USAC's regulatory authority is ultimately that of the FCC.

73.     In 2016, the FCC held that its communications with USAC were inter-agency or intra-agency memorandums or letters protected by 5 U.S.C. § 552(b)(5).

74.     The FCC has refused to decide the specific question of whether USAC is subject to FOIA.  According to the FCC, whether USAC is subject to FOIA is immaterial because, under established policy, FOIA requests seeking USAC records are directed to the FCC.

75.     The FCC is required to act on Plaintiff's Appeal, *see* 47 U.S.C. § 155(c)(4), and it could not delegate its duty to act on the Appeal to the Bureau.  *See id*. § 155(c)(1).  Nevertheless, the FCC or the OGC directed or permitted the Bureau to pass on the merits of Plaintiff's Appeal. The Bureau did so on November 21, 2018.

76.     The FCC attempted to forestall judicial review of its unlawful practices or policies of treating USAC as an agency for the purposes of FOIA, and of requiring parties to file FOIA requests for USAC documents, by having the Bureau issue a "supplemental decision" on Plaintiff's FOIA request, when the request had been before the FCC on appeal for 386 days.

77.     The FCC has adhered to its unlawful practices or policies for more than a decade

and will continue to do so absent a declaratory judgment that USAC is not an agency, as such is defined in FOIA, and that it is unlawful for the FCC to require the public to file FOIA requests to obtain documents from USAC.

78.     Declaratory relief will settle the legal issue of whether USAC is an agency under 5 U.S.C. § 552(f)(1) and put an end to the controversy and uncertainty that presently exists with respect to that issue.

## CLAIMS FOR RELIEF

### COUNT I
### (Failure to Act on FOIA Appeal, 5 U.S.C. § 522(a)(6)(A)(ii), (B)(i))

79.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

80.     Plaintiff has the right under FOIA to obtain a final determination from the FCC with respect to his Appeal within no more than 30 working days after the FCC received the Appeal. 5 U.S.C. § 552(a)(6)(A)(ii), (B)(i).

81.     The FCC has violated Plaintiff's rights under FOIA by failing to act on his Appeal.

82.     Unless enjoined and made subject to a declaration of Plaintiff's rights by this Court, the FCC will continue to violate Plaintiff's right to obtain a final determination with respect to his Appeal.

### COUNT II
### (Declaratory Judgment that USAC Is Not an Agency under FOIA, 5 U.S.C. § 522(f)(1))

83.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

84.     The FCC has an unlawful policy or practice of treating USAC as if it were an agency for the purposes of FOIA.

85.     The FCC has an unlawful policy or practice of requiring parties to file FOIA requests to obtain documents from USAC.

86.     The FCC has an unlawful policy or practice of treating documents in USAC's possession as agency records for the purposes of FOIA.

87.     The FCC has claimed that USAC is a law enforcement agency and that USAC performs a law enforcement function to which Exemption 7(E) applies.

88.     Plaintiff's representation of clients has been, and will continue to be, adversely affected by the FCC's unlawful policies and practices with respect to USAC.

89.     An actual, present, and justiciable controversy has arisen between Plaintiff and the FCC concerning whether USAC is an agency for the purposes of FOIA.

90.     Unless enjoined and made subject to this Court's declaration that USAC is not an agency for the purposes of FOIA and cannot be lawfully treated as such, the FCC will continue its unlawful policies and practices with respect to USAC.

## COUNT III
### (Failure to Make Record Available, 5 U.S.C. § 552(a)(3)(A), (6)(A))

91.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

92.     If Exhibit E of the Windstream Appeal had been obtained by the FCC, and was under the FCC's control, when Plaintiff submitted his FOIA request, the FCC is withholding Exhibit E without legal justification in violation of FOIA, 5 U.S.C. § 552(a)(3)(A), (6)(A).

93.     Plaintiff is entitled to reasonable attorney fees and other litigation costs under 5 U.S.C. § 552(a)(4)(E).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Expedite its consideration of this action pursuant to 28 U.S.C. § 1657(a);

B.      Declare that USAC is not an "agency" as defined in 5 U.S.C. §§ 551(1), 552(f)(1)

for the purposes of FOIA;

C.      Enjoin the FCC from treating USAC as if it were an "agency" as defined in 5 U.S.C.

§§ 551(1), 552(f)(1) for the purposes of FOIA;

D.      Find that the FCC's failure to timely act on Plaintiff's appeal was unlawful;

E.      Enjoin the FCC from withholding Exhibit E of the Windstream Appeal and order

it to produce that document for inspection and copying by Plaintiff;

F.      Award Plaintiff his attorney fees and costs; and

G.      Grant such other relief as the Court may deem just and proper.

                        Respectfully submitted,

                        */s/ Russell D. Lukas*
                        _____
                        Russell D. Lukas
                        D.C. Bar No. 213926

                        10 Wetherfield Court
                        Potomac, MD 20854
                        (301) 509-2450

                        LUKAS, LAFURIA, GUTIERREZ & SACHS, LLP
                        8300 Greensboro Drive, Suite 1200
                        Tysons, VA 22102
                        (703) 584-8660
                        rlukas@fcclaw.com

February 25, 2019